UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| LILLIE ANN STOUT | ) | |
| | ) | |
| V. | ) | NO. 2:14-CV-328 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is an action for judicial review after the Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act were administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. The Plaintiff and Defendant have both filed Motions for Summary Judgment [Docs. 21 and 24].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff had filed a previous application for disability insurance benefits which was denied on October 3, 2011 by the same ALJ who rendered the decision which is the subject of this action (Tr. 68). His prior decision is very similar to that now under review. Plaintiff was 48 years of age when the prior decision was rendered, a younger individual under the Commissioner's regulations. However, she was 50, or "closely approaching advanced age," at the time the present decision was rendered on June 11, 2013. She has a high school education. She has past relevant work was as a certified nurse assistant ["CNA"], which was semi-skilled and required medium exertion. "Medium" work requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 CFR § 404.1567(c). Plaintiff was ultimately found to be capable of returning to this past relevant work. In the previous hearing decision, the Plaintiff was found capable of returning to another job she once held as a gusset machine feeder. That job was unskilled but also required medium exertion. In both instances, Plaintiff's alleged disability onset date was December 12, 2009.

2

Plaintiff's medical history is set out in the Commissioner's brief as follows:

Wes Hansen, M.D., was Plaintiff's primary care physician (Tr. 39). At various times, he treated her for chest pain, knee pain, diabetes, back pain, low potassium, edema, and other issues (Tr. 224- 260). On November 16, 2009, Plaintiff presented to Dr. Hansen with complaints of diabetes, hypertension, and joint pain in her fingers (Tr. 229). He assessed her with degenerative joint disease, uncontrolled hypertension, and diabetes (Tr. 229). She reported that she did not have money for her medication (Tr. 229). Dr. Hansen gave Plaintiff samples of some of her medication and noted that he would try to get assistance for her other medication (Tr. 229). She presented to Dr. Hansen on December 16, 2009, with complaints of whole body pain and diabetes (Tr. 228). She specifically denied joint pain (Tr. 228). Dr. Hansen assessed her with fibromyalgia and provided samples of Lyrica (Tr. 228). On August 5, 2010, her last appointment with Dr. Hansen, Plaintiff weighed 258 pounds, and Dr. Hansen assessed her with musculoskeletal chest pain and diabetes (Tr. 224). Dr. Hansen or his staff routinely noted that Plaintiff was a smoker (Tr. 257-60).

Plaintiff also treated with the Carter County Health Department during the alleged period of disability (Tr. 345-413). Providers there treated her for chest pain, abdominal/epigastric pain, reflux, skin conditions, neck pain, and a variety of other conditions (Tr. 379-413, 475-82, 533-36). On February 15, 2011, and March 1, 2011, Plaintiff presented with back pain (Tr. 405-08). She declined an MRI and was advised to take Flexeril (Tr. 405-08). Plaintiff presented to the health department on March 14, 2011, and "admitted" to poor compliance with the ADA diet (Tr. 400).[1] She stated that she did not review her fasting blood sugar regularly (Tr. 400). The provider counseled Plaintiff on diet and exercise and advised her to lose weight and stop smoking (Tr. 401).

Plaintiff had a dietary consultation on March 25, 2011, and the dietician noted that Plaintiff's self-report indicated that she did not make healthy choices (Tr. 404). She reported that she usually checked her blood sugar two hours after eating (Tr. 402). She weighed 256 pounds (Tr. 402). The dietician advised Plaintiff to lose 87 pounds in order to reach a healthy weight and provided her with specific dietary guidelines (Tr. 402, 404).

On May 5, 2011, she presented with mild low back tenderness and abdominal pain (Tr. 397). The provider advised Plaintiff to go to the emergency room if her pain worsened (Tr. 398). At an appointment on July 29, 2011, Plaintiff's fasting blood sugar was 159 mg/dL (Tr. 389). Plaintiff described her meals the day before, which included bologna and cheese on white bread, a hamburger, a hot dog, and fried potatoes (Tr. 390). The provider counseled her on diet and exercise (Tr. 390).

On October 19, 2011, Plaintiff presented with mild right back tenderness, and her straight leg raise test was negative (Tr. 385). Due to abdominal pain, Rene

---

[1] Apparently, this refers to the American Diabetes Association.

3

Huffman, A.P.N., scheduled Plaintiff for an ultrasound and provided her with the contact information of a financial counselor at the hospital (Tr. 387). Plaintiff presented to the emergency room on October 25, 2011, with back pain radiating to both legs (Tr. 383). An x-ray revealed degenerative changes throughout the lumbar spine (Tr. 343-44). At a follow-up appointment on October 28, 2011, Plaintiff moved guardedly and was tender through her lumbar spine (Tr. 383). Her straight leg raise was negative, and she had full range of motion and equal strength in her lower extremities (Tr. 383). Nurse Huffman prescribed Flexeril and prednisone and increased Plaintiff's diabetes medication (Tr. 384). She also advised Plaintiff to monitor her blood sugar carefully and to return in two weeks (Tr. 384). Plaintiff returned to the health department on November 17, 2011 (Tr. 384-85). She was not in distress and presented with abdominal issues, including moderate epigastric tenderness, a skin infection, and a laceration on her knee (Tr. 381).

Plaintiff prepared an adult Function Report form around December 21, 2011 (Tr. 172). She reported that she was not able to sit or stand for over 20 or 30 minutes due to pain (Tr. 172) Areas of limitation that she claimed included getting in and out of bed and the bathtub, getting up from the commode, climbing stairs, cleaning house, lifting, seeing, remembering things, walking, and running (Tr. 172-73). She stated that she had difficulty writing and brushing her hair because her hands went numb and difficulty eating because she choked frequently (Tr. 172-73). Plaintiff reported that she prepared meals twice a week and spent three hours per week doing laundry (Tr. 174). She had no problems handling money, went outside daily to smoke on the porch, and attended church a couple of times per month (Tr. 175). Plaintiff reported that she did not feel up to going places (Tr. 177). Her family visited twice per week (Tr. 176). She stated she could walk 25 feet or less and would require 20-30 minutes of rest after doing so (Tr. 177). Plaintiff reported that she could not complete tasks she started and that her attention span was 30 minutes (Tr. 177). She used glasses during her waking hours, a wheelchair when shopping at the grocery store, and a cane when her back and legs hurt (Tr. 178).

Plaintiff reported to the hospital on January 16, 2012, with complaints of pressure-like chest pain (Tr. 418). She denied numbness (Tr. 418). Plaintiff reported smoking a pack of cigarettes per day and had no other complaints (Tr. 418). During her two-day stay, the chest pain resolved and her EKG did not show any ST-segment changes (Tr. 414). Plaintiff complained that her chest pain radiated from her back, and the attending physician ordered MRIs of the cervical and thoracic spine (Tr. 418). The tests revealed mild osteophyte and uncovertebral hypertrophy, mild narrowing of the neural foramen bilateral, mild left neural foraminal stenosis, mild to moderate central canal stenosis, cervical spondylosis, and degenerative disc disease in the cervical spine (Tr. 414, 422). Claire de Marcellus Paris, M.D., the attending physician, observed that Plaintiff did not complain of pain in the area where the MRI showed degenerative changes and that Plaintiff's pain was "probably" related to a muscle spasm (Tr. 414). She

4

assessed Plaintiff with several impairments, including diabetes, tobacco abuse, obesity, and renal failure (Tr. 419). Dr. Paris counseled Plaintiff regarding smoking cessation, diet, exercise, and weight loss (Tr. 419).

On January 30, 2012, Plaintiff presented to Krish Purswani, M.D., for a consultative examination (Tr. 429). Plaintiff reported that she smoked one pack of cigarettes per day and had done so for 35 years (Tr. 430). She was 69 inches tall and weighed 242 pounds (Tr. 431). Plaintiff was in no apparent distress, had a normal gait and station, and moved without the aid of assistive devices (Tr. 431). She was able to move on and off the exam table without help (Tr. 431). A physical exam revealed that Plaintiff's shoulders were symmetric, well aligned, and non-tender (Tr. 431). She exhibited normal range of motion in both shoulders bilaterally (Tr. 431). Her elbows, wrists, and hands were normal and non-tender. Plaintiff's knees and ankles were also bilaterally normal, stable, non-tender and exhibited normal range of motion (Tr. 431-32). Her back was nontender and her single leg raise was 75° bilaterally (Tr. 432). Flexion was 75° and extension and lateral flexion were normal bilaterally (Tr. 432). Dr. Purswani noted the MRI of Plaintiff's cervical spine taken on January 18, 2012 (Tr. 430). He assessed Plaintiff with diabetes, joint pain, fibromyalgia, stroke, back pain, chest pain (resolved), neck pain, cervical spinal stenosis, severe obesity, and tobacco abuse (Tr. 432). He suggested weight loss and smoking cessation (Tr. 432). Dr. Purswani opined that Plaintiff maintained the residual functional capacity to frequently lift 25 pounds half the time out of an 8-hour day, stand or walk for 7 hours in an 8-hour workday, sit for 8 hours, and manage her own affairs (Tr. 432).

Plaintiff underwent a current mental functioning assessment, also on January 30, 2012, with Kathy Birchfield, M.Ed., and Diane Whitehead, Ph.D. (Tr. 425-27). She reported that her day began with a cup of coffee and a cigarette, and she washed dishes, read, or watched television (Tr. 426). Plaintiff stated that she shopped with her family and that she and her daughter mopped, swept, vacuumed, and did laundry (Tr. 426-27). The examiners noted that Plaintiff did not have any impairments that would limit her ability to carry out certain functional requirements of work (Tr. 427).

In February of 2012, agency consultants Saul Juliao, M.D., and Frank Kupstas, Ph.D., analyzed Plaintiff's claim (Tr. 433-65). Dr. Juliao found evidence of "some worsening" of Plaintiff's condition, but no significant changes (Tr. 453). He opined that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about 6 hours in an 8-hour work day, and sit for about 6 hours in an 8-hour work day (Tr. 458). Dr. Juliao concluded that Plaintiff had an unlimited capacity for pushing and pulling, including the use of hand controls (Tr. 458). She could occasionally engage in postures such as kneeling or crouching, but should never climb ladders, ropes, or scaffolds (Tr. 459). Dr. Kupstas noted that Plaintiff's depressive symptoms were mild and that a significant change had not occurred since the ALJ's denial of benefits in the prior case (Tr. 453).

Plaintiff presented to the health department on March 7, 2012, with

5

complaints of a sore mouth and reported that she needed stronger pain medication for her back (Tr. 481-82). Nurse Huffman noted that Plaintiff's sugars were high and assessed her with uncontrolled diabetes, thrush, back pain, and renal insufficiency (recent) (Tr. 482). Plaintiff weighed 244.8 pounds. Nurse Huffman also advised her to continue the Flexeril as prescribed (Tr. 482).

Agency physician Joseph Curtsinger, M.D., reviewed Plaintiff's claim around May 7, 2012, in connection with her request for reconsideration (Tr. 488-95). He opined that Plaintiff maintained the capacity to occasionally lift 50 pounds and frequently lift 25 pounds (Tr. 489). Dr. Curtsinger opined that Plaintiff could stand, walk, or sit for about 6 hours in an 8-hour workday and that she had an unlimited capacity for pushing and pulling (Tr. 489). He concluded that no postural, manipulative, communicative, environmental, or visual limitations had been established (Tr. 490-93). He noted that there had been no significant change in Plaintiff's condition since the ALJ's determination of October 3, 2011 (Tr. 495, 508).

On December 5, 2012, Plaintiff presented to the health department requesting medication refills and complaining of a sore area around her eye and back pain (Tr. 533). She weighed 239.8 pounds (Tr. 533). The provider noted that Plaintiff "admit[ed]" to a high-fat diet and fried foods (Tr. 534). Plaintiff had met with a dietician the prior year, and the provider noted that she had "no desire" for further counseling (Tr. 534). Plaintiff and the provider discussed "at length" the risks of a high-fat diet, sedentary lifestyle, and smoking (Tr. 533-34). On the form, the provider noted next to tobacco use "cessation advised!" (Tr. 534). The provider also noted that Plaintiff "does not desire to quit despite known hx of early COPD" (Tr.534). At the same appointment, Plaintiff and the provider discussed Plaintiff's poor posture (Tr. 534). The provider recommended that Plaintiff wear a supportive bra and do back strengthening exercises in order to address chronic pain (Tr. 534).

At a follow-up appointment at the health department on April 11, 2013, Nurse Huffman noted that Plaintiff's blood sugar was 140-160 mg/dL and that she was not checking her sugars regularly (Tr. 532). She weighed 232 pounds (Tr. 531). Plaintiff also reported that she had been out of Prozac and did not obtain a refill at her prior visit (Tr. 532). Her treatment plan included directions to check her blood sugar at least three days per week and to "never" stop taking antidepressants suddenly (Tr. 532).

[Doc. 25, pgs. 2-8].

On May 22, 2013, the hearing took place before the ALJ. After listening to the Plaintiff's testimony, the ALJ took the testimony of Ms. Donna Bardsley, a vocational expert ["VE"]. Ms. Bardsley identified the vocational requirements of Plaintiff's CNA

6

job as being semi-skilled and requiring medium exertion. Although Plaintiff had described it as a heavy job because of having to lift patients, the job is regularly performed at the medium level of exertion. She was then asked to assume a hypothetical person of Plaintiff's age, education, and work experience. When asked if there were jobs such a person could perform with the ability to perform medium work opined by Dr. Curtsinger, the VE identified a significant number of jobs in the regional and national economies which such a person could perform (Tr. 51-52).[2] If Plaintiff's testimony at the hearing was found to be credible, then Ms. Bardsley opined that there would be no jobs which she could perform. (Tr. 52-53). The VE was then asked by Plaintiff's attorney if there would be jobs that the person could perform with the limitations opined by Dr. Juliao, who assessed the Plaintiff with being able to perform a reduced range of work at the light exertional level (occasionally lifting 20 pounds and frequently lifting 10 with certain postural limitations). She testified that Plaintiff could not return to her past relevant work with those limitations, and could only do a reduced range of light jobs, mentioning 4,000 in the regional economy. (Tr. 53-54).

As previously stated, the ALJ's hearing decision on the present applications was very similar to the one he rendered in 2011. He found that the Plaintiff had severe impairments of obesity, fibromyalgia, and diabetes mellitus. He noted immediately that Dr. Hansen, her treating doctor in 2009, had treated her for several ailments, including

---

[2] Even if the Plaintiff were mentally limited to extent opined by the State Agency psychologist, the VE testified that this would not diminish the number of jobs identified.

not only diabetes mellitus and fibromyalgia, but also degenerative joint disease. (Tr. 13). He noted her treatment in October of 2009 at Johnson City Medical Center, where she was admitted with complaints of chest pain. Her weight was noted on admission to have been 245 pounds with a height of five feet nine inches. She was discharged after various tests relating to her heart were essentially normal. Her discharge diagnoses were chest pain, gastroesophageal reflux, diabetes and dyslipidemia. (Tr. 14).

The ALJ noted that the Plaintiff was admitted again to Johnson City Medical Center in September 2011, again with chest pain. Her physical exam was essentially normal except for wheezing in the lungs. It was noted in the records that the Plaintiff smoked one and a half packs of cigarettes a day for 25 years. No cardiac abnormalities were found after several tests were performed. She was discharged with a diagnosis of chest pain, hypertension and diabetes. (Tr. 14).

He discussed her treatment at the Carter County Health Department in 2011, where she was treated for a host of symptoms. It was noted she was still smoking, not complying with the ADA diet, and not reviewing her blood sugars regularly. She did have x-rays done which showed evidence of degenerative disc disease and osteophytes. However, her guarded movements and complaints of tenderness in her lumbar spine were accompanied by negative straight leg raising and equal strength in both lower extremities. A visit to the emergency room resulted in a diagnosis that her back pain was due to gastroesophageal reflux disease. (Tr. 14-15).

The ALJ mentioned that Plaintiff was hospitalized again with chest pains in

8

January 2012. Her diagnoses included atypical chest pain, diabetes, gastroesophageal reflux disease, renal failure, hypertension, obesity, fibromyalgia and tobacco abuse. Cardiac impairments were ruled out by tests performed. An MRI of the cervical spine showed some degenerative disc disease, but the report noted that she did not have pain in the cervical area, and that the pain was most likely due to a muscle spasm. Her discharge diagnoses included cervical degenerative joint disease. (Tr. 15).

The ALJ then discussed the findings of consultative examiner Dr. Krish Purswani in January 2012. After a virtually negative physical exam, he opined that she had diabetes, fibromyalgia, joint pain, various other pains in different regions of her body, and tobacco abuse. He stated the Plaintiff could frequently lift 25 pounds, stand for seven hours a day and walk for seven hours a day, and sit for eight hours in an eight hour work day. (Tr. 15).

He then discussed her March 22, 2012 function report submitted to the Social Security Administration. She described her daily activities, the pains she had, and her limitations on standing and waling and paying attention. (Tr. 15-16).

The ALJ next noted the residual functional capacity ["RFC"] assessment completed by Dr. Juliao. The ALJ noted the restrictions opined by him, including no more than light level lifting and various postural and environmental limitations. (Tr. 16).

The next medical information of note mentioned in the hearing decision was the RFC assessment done by Dr. Curtsinger on May 7, 2012, which showed that the Plaintiff had a capacity for the full range of medium physical work. The ALJ also pointed out that

9

Dr. Curtsinger was of the opinion after reviewing the more recent evidence, that there was no significant change in the Plaintiff's physical condition since the previous hearing decision in 2011. (Tr. 16).

Further visits to Health Department were discussed. They advised the Plaintiff to check her blood sugars more regularly and stop smoking. (Tr. 16).

The ALJ discussed the Plaintiff's mental condition, which is not called into question by the Plaintiff in this suit. He noted the results of the consultative exam and the opinion of the State Agency psychologist that the Plaintiff had no severe mental impairment. (Tr. 16-17).

The ALJ then found that the Plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments in the regulations. Sections considered by him were Sections 1.00, 4.00, 5.00, 5.00, 9.00 and 12.00. (Tr. 18-19).

The ALJ then stated that the Plaintiff had the RFC to perform the full range of medium work. In this regard he discussed her various alleged impairments. He noted that Plaintiff's hypertension was controlled by medication. He stated that although Plaintiff had complained of osteoarthritis and joint pain, and had been diagnosed with degenerative joint disease, that she had denied arthritis or back pain during her October 2009 hospitalization described above. He stated that he had considered Plaintiff's obesity in accordance with Social Security Ruling 02-1p. In this regard, he noted her normal gait and station and ability to get on and off the exam table during Dr. Purswani's consultative

examination. (Tr. 20).

He then assessed Plaintiff's credibility regarding her allegations of disabling pain. He found that she did not have any medically determinable impairment that would preclude medium work. He noted that her reported daily activities did not suggest the very low level of physical functioning she subjectively described. He noted her noncompliance with suggestions to stop smoking and check her blood sugars, both of which were advised on numerous visits to different providers. He stated than not one of her physicians had ever recommended any restrictions on her activities. Based upon all of this, he found Plaintiff's allegations of disabling pain to be not credible. (Tr. 20-21).

He then evaluated the opinion evidence. He gave great weight to Dr. Purswani's opinion as to lifting 25 pounds frequently, standing and walking for seven hours and sitting for eight hours, finding the opinion "consistent with the objective medical findings" in the record. He also gave great weight to Dr. Curtsinger, who opined that the Plaintiff could perform the full range of medium work. He found Dr. Curtsinger's opinion "consistent with the overall objective findings in the record as well as the assessment by Dr. Purswani." He also discussed the weight given to the psychological examiners, but once again, Plaintiff has raised no issue regarding the mental health evidence. (Tr. 21).

Because the Plaintiff could perform the full range of medium work, the ALJ found that she could return to her past relevant work as a CNA as described by the VE. He also found that there were numerous other jobs identified with Plaintiff's RFC that she could

11

perform at the full range of medium work. Accordingly, he found that the Plaintiff was not disabled. (Tr. 22-23).

The Plaintiff asserts that the ALJ erred in four respects. First, she states that "[t]he ALJ failed to include as a severe impairment the claimant's degenerative disc disease." Second, she asserts that "[t]he unfavorable decision incorrectly states certain material medical opinion testimony." In this regard, she points out that the ALJ did "not consider the weight given to the consultative report of Dr. Saul Juliao, MD (TR 457-465), whose opinion is the most favorable to the Claimant of the opinion evidence, and inaccurately states the limitations contained in the opinion of the consultative examiner, Dr. Purswani (TR 429-432)." Third, she insists that the ALJ's finding that the Plaintiff can perform the full range of medium work is not supported by substantial evidence. Fourth, she asserts "[i]f the Claimant is incapable of medium exertion, then as a matter of law the Social Security Administration has failed to carry its burden of proving that the Claimant is capable of performing other jobs." [Doc. 23, pg. 4].

With respect to the third and fourth grounds, Plaintiff's argument is based on the fact that if the Plaintiff cannot perform the full range of medium work, she cannot return to her past relevant job as a CNA, and that "the Unfavorable Decision must be reversed." Plaintiff fleshed this argument out more at the administrative hearing, arguing that after the previous decision denying benefits, the Plaintiff discovered she had a back problem. Because of the back problem, she stated that she should only be found, at best, to be able to perform sedentary work. Therefore, she maintained that under Rules 201.12 and

12

201.14 of the Medical-Vocational Guidelines [the "Grid"], she must be found disabled as a matter of law. (Tr. 33-35).

However, the Plaintiff's argument in this regard fails to take into account that all of the medical source opinions find her capable of at least light work. Even Dr. Juliao found her capable of a moderately reduced range of *light* work. Dr. Purswani, even if his opinions are interpreted as the Plaintiff suggests, found her capable of no less than a slightly reduced range of *medium* work. Dr. Curtsinger clearly opined that she could perform the full range of *medium* work. The only evidence to support her argument that she is capable of no more than sedentary work is her own subjective testimony. At the light level, even if she were illiterate and had only unskilled or no past work experience, which of course is not the case, she would be "not disabled" under the Grid at her age under Rule 202.10. Substantial evidence abounds that she is capable of at least light exertion, and thus, not disabled.

Although this fact basically disposes of all of Plaintiff's assignments of error, they will also be discussed. It is true that the ALJ did not find that the Plaintiff had a severe impairment of degenerative disc disease. He was quite aware at the hearing that this was the Plaintiff's primary argument with regard to the changes in her circumstances that had taken place since the first adverse decision in 2011. (Tr. 33-35 and 44). A mere diagnosis of a condition does not automatically equate with a severe impairment. Interestingly in this case, the Plaintiff, when offered the opportunity by the ALJ, could not distinguish between the limiting effects of pain related to her fibromyalgia, which

13

was found to have been a severe impairment in both hearings, from the pain from her back condition. (Tr. 44). Also, once an ALJ finds that at least one severe impairment exists at Step Two, he or she must, at step three, consider the effects of *all* impairments, including impairments which are not severe. 20 CFR 404.1520(e), 404.1545(a)(2). This ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 19). Even when the mild degenerative changes in her spine were found, Dr. Paris noted that the Plaintiff's complaints of pain were not from regions of her body where those degenerative changes would have caused pain. (Tr. 414). The ALJ did consider all of the Plaintiff's conditions and evaluated the pain these would have caused. He committed no reversible error by not denominating her degenerative disc disease as "severe."

    Plaintiff also complains that the ALJ erred in his handling of the opinion evidence. She states that the ALJ failed completely to evaluate and state the weight he assigned to the opinion of Dr. Juliao. Also, she insists that the opinions of Dr. Purswani and Dr. Curtsinger were so different that the ALJ could not give them both "great weight." Also, the Plaintiff says that the ALJ misstated the opinion of Dr. Purswani. The ALJ was certainly aware of the findings and opinions of Dr. Juliao, and set them out in great detail between the opinions of Drs. Purswani and Curtsinger. (Tr. 16). The Court is unaware of any ruling requiring a reversal or remand because the ALJ did not specifically state the weight he gave this State Agency physician, especially where the ALJ assigned

14

great weight to the two other opinions which found lesser restrictions. It is obvious to the Court that he knew of Dr. Juliao and did not give his opinion great weight. Bearing in mind that the Plaintiff would be not disabled at the light level, this is, at best, harmless error.

Plaintiff makes much of the fact that the ALJ did not mention that Dr. Purswani only opined that the Plaintiff could "frequently lift 25 pounds ½ of the time in an 8 hour day." 20 CFR § 404.1567(c) defines medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." Dr. Purswani clearly opined that the Plaintiff could "frequently" lift 25 pounds, and this supports the ALJ's RFC finding even though Dr. Purswani did not say Plaintiff could occasionally lift 50 pounds. The ALJ found his opinion consistent with the objective medical findings and gave it great weight. There is no requirement that the ALJ adopt and endorse every single finding of a particular physician's opinion. If it appeared to the Court that the ALJ was straining to adopt bits and pieces of various opinions to come up with a finding that the Plaintiff was not disabled, it would be a different story. But that is not the case here. Dr. Purswani's opinion is very similar to that of Dr. Curtsinger. They are not identical, but they are very similar. Their slight differences do not mean that both could not be given great weight.

It appears to this Court that the ALJ committed no reversible errors of law, and that there was substantial evidence for his RFC finding that the Plaintiff could do medium work and thus return to her past relevant work. Accordingly, it is respectfully

15

recommended that the Plaintiff's Motion for Summary Judgment [Doc. 21] be DENIED, and the Defendant Commissioner's Motion for Summary Judgment [Doc. 24] be GRANTED.[3]

                                          Respectfully submitted,

                                          s/Clifton L. Corker
                                          United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).